UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| *In re: Navia Benefit Solutions, Inc. Data Breach Litigation*<br><br>This Document Relates To: All Actions | CASE NO. 2:26-cv-00909<br><br>**STIPULATED AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related

responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

3. Nothing in this Stipulation shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

4. This Stipulation may be modified by agreement of the parties for good cause shown. If the parties cannot resolve their disagreements regarding these modifications, the parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules governing discovery disputes.

**B. Definitions**

a. "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Hard-Copy Documents and ESI, as defined herein.

b. "Electronically Stored Information" or "ESI" means information that is stored electronically, regardless of the media or whether it is in the original format in which it was created. ESI carries the broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

c. "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is .xls or .xlsx.

e. "Near-Native Format" means and refers to the format of ESI that preserves the functionality, searchability, and integrity of a Native Format item when it is infeasible or unduly burdensome to produce the item in Native Format, including where redactions to an otherwise Native Format item are made. For example, an MBOX is a suitable near-native format for production of Gmail, an Excel spreadsheet is a suitable near-native format for production of Google Sheets, and EML or MSG files may be suitable near-native formats for production of individual e-mail messages. Static images are not near-native formats for production of any form except Hard-Copy Documents.

f. "Metadata" means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

g. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

h. "Producing Party" means any Party or third-Party to this litigation who produces Documents or ESI pursuant to any discovery request, subpoena, or otherwise.

i. "Receiving Party" means a Party or third-Party to this Action who requests the protections provided by this ESI Protocol.

**C. ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet

and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

6. Parties have a continuing obligation to identify any other custodial and non-custodial data sources likely to contain discoverable ESI and preserve them.

**D. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology.

a. The parties shall timely meet and confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

b. The Producing Party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party.

c. The following provisions apply to search terms / queries of the Requesting Party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system")

broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. In the event the parties are unable to reach agreement on search terms, including as to the breadth of proportional document review efforts, the parties shall consider in good faith the possibility of a phased approach to document review and production efforts.

d. To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the Requesting Party. Upon review of the exported electronic file(s), the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the parties meeting and conferring upon a set of queries to be made for discoverable information within the database.

3. Format.

a. The Parties agree to make rolling productions through a secure link sent via email to Court-appointed interim lead counsel for Plaintiffs and all counsel of record for Defendant, and any additional counsel agreed to in writing.

b. The Parties agree that, except as provided herein or otherwise agreed upon by the parties, ESI shall be produced in Group IV TIFF, 300-dpi, PDF, or native format. No matter the format, such productions shall be accompanied by Opticon and IPRO load files (or other

generally acceptable load file format) containing the metadata specified in Exhibit A and companion OCR and/or extracted-text text files. The Parties will produce the following forms of ESI in native format: Spreadsheets (e.g., Microsoft Excel, Google Sheets, Apple Numbers); Presentations (e.g., PowerPoint, Keynote, Google Slides); Databases and database extracts (e.g., Microsoft Access, SQL exports); Photographs and other native image files (e.g., JPEG, PNG, HEIC, RAW); Audio, video, and voicemail recordings; and other documents of a type which cannot be reasonably converted to useful static images. If particular documents warrant a different format, the parties will meet and confer to arrange for the mutually acceptable production of such documents. If source code is required to be produced, the parties will meet and confer to develop a separate source code review and confidentiality protocol. The parties agree that live credentials, access tokens, production administrative access, and similar keys are exempt from production absent a separate written agreement, following a meet and confer, or a court order.

c. Document level extracted text or OCR for documents without extracted text will be provided by the producing party for every record, including for scanned hard copy documents as described above. Extracted text will not be provided for ESI that have been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted text. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

d. Documents with hidden content, such as spreadsheets or presentations, shall be produced in native or TIFF with all content unhidden and notes displayed. If a document

must be produced in TIFF, it shall be processed with all content unhidden and any notes displayed on the TIFF image. The Parties reserve all rights to meet and confer to request production of documents with hidden content in an alternate format.

e. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

f. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. The parties shall take reasonable steps to preserve parent-child relationships within a document family, including any attachments to emails subsumed within an email thread.

g. The Parties agree to produce documents using UTC (Coordinated Universal Time).

h. Where an original native file or near-native file is produced as provided in this agreement, the Producing Party shall also produce a single-page PDF (or TIFF) placeholder for each document. The placeholder should be endorsed with "Native Format Document," or equivalent, and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. For documents whose native format is MS Power Point, the original native files shall be produced with any comments and color preserved. The produced native file should be named with the beginning Bates numbers assigned to that document. The parties will meet and confer upon the other types of files that are not easily converted to image format and will therefore be produced in native format.

i. The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

j. All documents, native ESI, photographs, and video shall be produced in color if stored in color. Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises regarding requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

4. De-duplication. A Producing Party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either: (1) exact duplicate documents based on MD5 hash values across custodians, or (2) emails that contain the same content, sender and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform. However, family relationships will be maintained and only exact email family groups, including email duplicate spare messages or equivalents, will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates, retaining only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The

custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively the Producing Party may utilize a separate "All Custodians" field which identifies all custodians of the subject document.

5. Email Threading. The parties may utilize industry-standard email threading technology in their review to thread email messages where the content of those messages, and any attachments, are wholly contained within a later email message in the thread (Inclusive Emails).

6. Metadata fields. The parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices. The Parties are not obligated to populate manually any of the metadata fields set forth below in Exhibit A if such fields cannot be reasonably extracted from a document with the exception of the following fields: (a) ProdBeg, (b) ProdEnd, (c) ProdBegAttach, (d) ProdEndAttach, (e) AllCustodian, which should be populated regardless of whether the fields can be populated pursuant to an automated process. The parties reserve the right to request additional metadata fields should the party show good cause for the necessity of such additional metadata.

7. Hard-Copy Documents. The parties agree that documents existing in hard copy form should be produced as PDF (or, if PDF is unavailable, in single-page Group IV, 300-dpi TIFF) format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format). Each PDF file will be given a unique file name that matches the Bates number label on the corresponding page. The accompanying load file shall contain, at a minimum: (a)

ProdBeg, (b) ProdEnd, (c) AttachProdBeg, (d) AttachProdEnd (e) custodian name, to the extent available, (f) Redaction, and (g) Confidentiality.

The parties agree that documents existing in hard copy form may be produced in searchable PDF.

The parties will undertake best efforts to unitize documents correctly. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

Text of hard-copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI.

**E. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure

where that data is created after a disclosure or response is made (unless excluded under Sections (E)(3) or (F)(1)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

b. On-line access data such as temporary internet files, history, cache, cookies, and the like.

c. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

d. Back-up data that are duplicative of data that are more accessible elsewhere.

e. Server, system or network logs.

f. Data remaining from systems no longer in use that is unintelligible on the systems in use.

g. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**F. Privilege**

1. The Parties agree that they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection within 30 days of the date in which the document otherwise would have appeared in the production, and in no event, fewer than 45 days from the close of discovery. The parties will meet and confer to determine a different timeline and/or format for production of a log, if necessary.

For documents and ESI that have been withheld as privileged, the withholding Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to

the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., “ACP” for attorney client privilege, “WP” for work product, or other descriptions as necessary based on the specific privilege being claimed), the document’s Bates numbers (in the event of a produced redacted document) or other unique identifier, and a description of the nature of the privileged or protected material in such a way that will enable other parties to assess the claim.

The parties reserve the right to request additional information regarding individual documents on the privilege log.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents, (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is

intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

6. Notification Requirements**.** A Producing Party must promptly notify the party receiving any information subject to a claim of privilege (the "Receiving Party"), in writing that it has disclosed privileged information without intending a waiver by the disclosure. The notification by the Producing Party shall include as specific an explanation as possible why the privileged information is covered by the attorney-client privilege, the work-product doctrine and/or constitutes trial preparation material. Upon such notification, the Receiving Party must, unless it contests the claim of attorney-client privilege, work product doctrine, or protection as trial preparation material promptly: (a) notify the Producing Party that it will make best efforts to identify and return, sequester or destroy the privileged information and any reasonably accessible copies it has, and (b) provide certification that it will cease further review, dissemination and use of the Protected Information.

DATED: October 12, 2026

By: /s/Kaleigh N. Boyd

Kaleigh N. Boyd (WSBA No. 52684)
**MCNAUL EBEL PLLC**
One Union Square
600 University Street, Suite 2700
Seattle, Washington 98101
Tel: (206) 389-9332
Email: kboyd@mcaul.com

John J. Nelson*
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (858) 209-6941
Email: jnelson@milberg.com

By: /s/Thomas E. Loeser

Thomas E. Loeser (SBN 38701)
**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (650) 697-0577
Email: tloeser@cpmlegal.com

*Interim Co-Lead Counsel*

By: /s/Nicholas C. Larson

Nicholas C. Larson (WSBA No. 46034)
**MURPHY PEARSON BRADLEY AND FEENEY**
520 Pike Street, Suite 1205
Seattle, WA 98101
Tel: (206) 219-2008
Email: nlarson@mpbf.com

By: /s/Carolyn Purwin Ryan
Carolyn Purwin Ryan (*pro hac vice*)
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
Tel: (264) 930-6836
Email: cpurwinryan@mullen.law

Justin A. Rick (*pro hac vice*)
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
Tel: (264) 930-5369
Email: jrick@mullen.law

*Counsel for Defendant*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: October 13, 2026.

John H. Chun
UNITED STATES DISTRICT JUDGE

EXHIBIT A

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DOCID/IMAGEFILENAME | Unique identifier |
| PRODBEG | First Page document number |
| PRODEND | Last Page document number |
| PRODBEGATT | First Page of Family group range number |
| PRODENDATT | Last Page of Family group range number |
| CUSTODIAN | All record owners of the file from whom the data was collected |
| ALLCUSTODIAN | All custodians who were in possession of a de-duplicated document besides the individual identified in the Custodian field |
| HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| FROM | Email Sender |
| TO | Email Recipient(s) |
| CC | Email Recipient(s) that were Copied |
| BCC | Email Recipient(s) that were Blind Copied |
| SUBJECT | Subject line of emails |
| THREADID | Identification of email threads |
| PARENTID | Identification of email parent relationships |
| FILENAME | Name of file |
| DATESENT | Email sent date |
| TIMESENT | Email sent time |
| DATERECEIVED | Email received date |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| TIMERECEIVED | Email received time |
| DATESAVED | Save date |
| TIMESAVED | Save time |
| DATELASTPRINT | Date last printed |
| TIMELASTPRINT | Time last printed |
| FILEEXT | File extension of document |
| AUTHOR | Author information as derived from the properties of the document |
| TITLE | Title from document metadata (if applicable) |
| DATECREATED | Date document was created on non-emails |
| TIMECREATED | Time document was created on non-emails |
| DATEMODIFIED | Last date document was modified on non-emails |
| TIMEMODIFIED | Last time document was modified on non-emails |
| FILESIZE | Size of Native file |
| PGCOUNT | Number of pages in document |
| OCRPATH | Path to extracted text of native file or OCR |
| NATIVELINK | Path to email or native file document (if applicable) |
| ORIGINALPATHFOLDER or FILEPATH | Path including filename |
| REDACTED | Whether the document contains redactions |
| CONFIDENTIALITY | The confidential designation should be populated |